Good morning, Your Honors. Kenneth M. Stern for Appellant County. Ramon, may it please the Court. There's currently a movie in the theaters called Runaway Jury and that's exactly what we have here. We had a jury that time after time after time throughout the trial, commencing with the deliberation, showed that they were not the fair, unbiased, objective jury to which Mr. Roman was entitled. And I'd like to point out that this was a very weak case against him. Not only was it a weak case, not only did the prosecution witnesses corroborate the defense, but based upon those witnesses' testimony, it showed that the version of what my client said happened as to both incidents was correct. On the first incident, the Georgia's Liquor Store attempted robbery. The victim said it wasn't my client and there was testimony. And he wasn't convicted. Excuse me? He wasn't convicted on that count, I thought. Well, he was convicted on counts relating to that incident, even though the witness said it wasn't my client and that the fingerprint on the beer can could have been from a former. There was testimony. What does driving by the store have to do with whether he did it or not? I think it goes to the fact that the witness doubted my client's credibility. So it's a... Well, how do you get there? I mean, to me, you know, if you're driving home and you drive by the place, I mean, and it had nothing to do with whether he was there or not. Well, he had testified that he went there at a certain day and taken a certain route. Yeah. And I believe that the testimony or the evidence was that the juror deliberately went and went through over that route to determine whether or not his testimony was credible. So it didn't have anything to do what did or did not happen in the Liquor Store on that day. Why is it material? Because I think my client's credibility is very important, very relevant, and very material. If the juror, jurors or a juror, is going outside of the parameters of what is introduced in Devin... See, I can understand it. If the testimony was, for example, well, it took me 10 minutes to get from point A to point B going a particular direction. And somebody then goes with their watch on and says, all right, you know, I'm going to check and see if it actually took, takes, you can do this in 10 minutes. But just because he said he went from home to George's Liquor Store a certain way, what difference does that make? Well, I don't think it did make a difference, except to the extent in the juror's mind that raised a credibility issue with her. Now, in terms of the other incident, the testing of the gun, I found what was really interesting about this was there had been a tentative, not a final vote, but a tentative vote of guilt on that count. Now, if the juror has enough of a question in her mind that she has to go out and do her own experiment at the same, after she's already voted tentatively for guilt, well, that shows why, why is she voting for guilt even if it's a tentative, non-binding vote? Why is she voting for guilt if she still has this question in her mind? Counsel, again, I have difficulty seeing where the prejudice lies. Let's suppose that they had, rather than have a tentative vote, they had just said, you know, we've really talked a long time. Let's just have a final vote right now. There's, she would have voted for guilt. And the State Court said if this experiment helped, did anything at all that helped him, because she said, yeah, it's pretty easy to fire the gun. Why is that an unreasonable conclusion under Supreme Court law? Well, because I think, I think in the totality of the circumstances and the factors to look at, it, it shows that the jury and certain jurors, and if you look at several incidents, were simply not giving my client the right to a fair, unbiased jury who's willing to do their job correctly and follow the law. You know, whether or not it would be easier or harder for the gun to go off accidentally, depending upon how easy it is to pull the trigger, I don't know. There's no evidence of that. Isn't it a fact that the foreman told her that it was not possible to accidentally trigger that gun? Well, that's. So then she goes and finds out from her brother, oh, yeah, it could happen. Yes, Your Honor. And that's kind of where, that's where basically I like the court to start looking at the prejudice, because from a prejudicial standpoint, although that, the misconduct of the foreman. Well, that was not maybe misconduct. Each juror comes to that jury room with their own experiences. I understand that, but, and as I cite in my reply brief, everybody comes with common experiences, but what he brought into the jury room was not a common experience. This was a very specific expertise that he had, and that's not proper. So although that wasn't raised as an issue of error, I think it's looked at in terms of the totality of the mindset of the jury. Because here, he's bringing something into their jury room that's not supposed to be there. And then Juror Lernerville goes out and does experiments and brings it into the jury room and they start discussing. And they actually start getting into arguments with the judge, or juror, I think her name is Prounce-Ulitsky, who's saying, well, this is improper. We shouldn't be doing this. And now the jury is embroiled in an argument over this misconduct and. Counsel, do you agree or disagree with the proposition that prejudice is an element of the claim when juror misconduct of this type is involved? In other words, did the state make a mistake, state court make a mistake by having a prejudice analysis? Well, no, they should have, but they used the wrong analysis. They used, the state court used a subjective look at the juror's mind, and that's not proper. It's supposed to be an objective look. Now, just to kind of set the record straight, there was misconduct alleged as to juror L and juror P. Now, what did L do and what did P do? Right. Well, L, well, L actually did two things. L did the experiments, and later, after a court watcher approached one of the jurors and started discussing the case with the juror, juror L became aware of that and did nothing. First of all, that juror should not have engaged in the conversation to begin with, and certainly, having done so and become aware of it, she should have reported this to the judge. Now, what did P do then? I believe that was the, Palmer, yes, that was the foreman who, as foreman, should have reported that to the judge, the misconduct of L, which he didn't do. And he brought in his own expertise regarding the gun. And, again ---- Is that raised as an issue in your opening brief as an assignment of error? Yes. Yeah. Well, going to the prejudice in terms of the totality of the circumstances, looking at the prejudice. So you have a starting point there. Then you factor in also the prejudice of the trial judge who admitted he erred in doing it, talking about, well, gee, if we've got a mistrial here, you're going to cost the county. If it's not a certified issue, that's the problem. Well, I understand that. I think I've asked for it to be certified. But I'm arguing it not as an issue of error, but going to the totality of circumstances of prejudice. And then you have prejudice going all the way to the end, dealing with the court watcher approaching the one of the jurors, discussions going on there, and then that juror discussing with another juror, and it not being reported to the judge. What I'm trying to show you ---- Here's my problem with your argument. You make a very credible argument that there could have been prejudice. But that isn't really the test for us. If it's arguable both ways, that there was prejudice or that there wasn't, and the state court picks one of those two, if their analysis is reasonable, it doesn't help us if your analysis is also reasonable. And so I guess I'm having difficulty because I'm not hearing from you what was unreasonable about the state court's approach. Well, first of all, the trial judge used the wrong standard. He used a subjective rather than objective standard. The court of appeals said going to the scene was not relevant. I believe it was relevant because it goes to my client's credibility. The court of appeals said doing the experiments is no different than coming into court with your own experience. Well, there is a big difference. It's clearer to do an experiment. And this, again, the same thing with Palmer. He was bringing in expertise, which is not allowed. The court of appeals said my client agreed to gamble, yet it was clear with the trial judge. He was not waiving his right to raise this issue, and they say the verdict reached was only tentative. They were incorrect. The verdict or they say the verdict was reached, but it was only tentative at that point. So that's why the court of appeal is not reasonable either. Thank you. Thank you. Thank you, Mr. Stern. Mr. Sokol. Good morning, Your Honors. California Deputy Attorney General Kenneth Sokoler for Respondent and Appellee. I'd first like to mention briefly a case which came out of the Supreme Court on Monday. I notified counsel about this case two days ago, Mitchell v. Esparza. The effect that Mitchell has on that case is that it makes quite clear that deference under Section 2254D of the AEDPA applies to findings of prejudice. Mitchell v. Esparza was the latest in a series of salvos coming out of the Supreme Court starting this time last year, which underscore the strength of the deference standard under Section 2254D. The Supreme Court has made it quite clear that habeas corpus is an extraordinary remedy on issues that have been rejected on the merits by the State court. We're looking at whether the State court's decision was unreasonable. And the Supreme Court has said unreasonable is even a stronger standard than clearly erroneous. That's the analytic backdrop of these issues that we're discussing. The test for prejudice here is whether there's a direct and rational connection between the misconduct and a prejudicial jury conclusion. So looking at, first, the misconduct regarding the juror P's experiments with the gun. Now, right there, counsel, I'm confused. You say it was juror P. Excuse me. And you say that in your red brief at page 39, he says it's juror L. Excuse me. I mistook myself. It was juror L. All the alleged misconduct in this case involves juror L. Then you've made some just facts, some mistakes in your brief on page 39. I wasn't aware of that, Your Honor. I apologize. We're only talking about juror L. The only allegations of misconduct in this case regarding the experiments with the gun or at all are those with juror L. The conclusion, her conclusion was how easy it was for the gun to go off. This supported the defense, if anything. Therefore, there was no direct and rational connection to a prejudicial jury conclusion. There would have been a direct and rational connection to a favorable jury conclusion for appellant if the jury had decided that way. The analysis can stop right there because that's the test. And it certainly wasn't unreasonable for the State court to find no prejudice. I would point to a few other factors beyond that that could affect the prejudice analysis if any more were needed. There's evidence that there was a brief discussion of this, 5 to 10 minutes. The foreman, foreperson, quote, unquote, put a lid on it. I would assert that the defense was weak here. The notion that he fired three shots by accident in the course of a struggle, shooting two people, is highly unlikely, especially when considered with the totality of the evidence, the lack of any gunshot residue on the murder victim, the lack of any sooting or stippling. The fact that Petitioner lied about when he first went in and sold the gun to the store owner and victim. He said it was on a Monday or Tuesday and that he went from work. And the evidence showed that his workplace was closed on those days and he didn't work. He also lied to the police about how he incurred the wounds. Going next to, unless the Court has any further questions about that incident of misconduct with the gun, I'll go to the accounts one through two, which was the robbery and shooting at the liquor store and the driving by. Again, we're looking at whether there was a direct and rational conclusion, connection between the misconduct and a prejudicial jury conclusion. Two of the jurors here said she merely drove past the place on her way home from work. The other said she, that quoted her as saying she followed the route Petitioner described. None of those have any connection with anything prejudicial here. The location of the store wasn't at issue. He did give some, Petitioner did give some testimony about how he would have gone to the store. But there was a map in front of the jury when Petitioner gave that testimony, a Thomas Brothers map. And he reviewed all that testimony with the map in front of him. And the map was again placed in front of the jury when a police officer testified and went over Petitioner's route. And the map was admitted into evidence. So I think that there's, first of all, nothing prejudicial about the fact that even if she would have retraced the route, there's nothing prejudicial about that. And what's more, given the presence of the map and its admission into evidence and all the testimony surrounding that map, it was redundant. Anything she did would have been redundant. A few other factors going to the notion of prejudice beyond the fact that there's no direct and rational connection with a prejudicial jury verdict. Petitioner wasn't even sure that he was ever in that liquor store under his own testimony. I think his defense would have been, he never really articulated what his defense was, but I think he would have said that maybe I touched a beer can by mistake. He wasn't even sure that he had been there. He thought he had. He never testified that he went in there and touched some beer can that he didn't buy. It was undisputed, moreover, that the fingerprint was his print on the beer can. And there was no dispute to the victim's testimony that the shooter left the beer can on the counter. Moreover, the expert's testimony was quite clear that a print left on a beer can in a cooler would not last. He said it wouldn't last even when you took the can out of the cooler, and it was even less likely it would last if you left the can in the cooler. So in both of these crimes, based on the lack of a direct and rational connection between the misconduct and an unfavorable verdict, the State Court of Appeal did not make an unreasonable conclusion within the meaning of 2254D in finding no prejudice. I'd like to address a couple of other things in the argument. One is we are not here to reevaluate the sufficiency of the evidence, which is not an issue on appeal. In evaluating the case under 2254D, counsel said that the State Court used to subjectively examine the issue of prejudice in examining the notion that the jurors said it didn't have anything to do with their decision. That's true in terms of what the trial court did, but we're evaluating under 2254D the California Court of Appeals' opinion and decision on this case. And the California Court of Appeals applied an objective standard and not a subjective standard. Finally, this discussion of some contact between jurors and a court watcher, that allegation of misconduct was never raised in the district court. It certainly wasn't the subject of a certificate of appealability, and what's more, it happened in the penalty phase, which Petitioner won because he got life without parole instead of the death penalty. So even if it was somehow cognizable, it would be utterly irrelevant to the question of whether the misconduct at issue here affected a prejudicial jury conclusion on the questions of guilt or innocence. Unless the Court has any further questions, I'll submit on the briefing. Okay. Do you think that's all right? Well, thank you both for your argument, and the matter just argued to be submitted. The Court will stand in recess for the day. Thank you. Thank you.
judges: B. Fletcher, Rymer, Graber